**William G. LIBBY, Appellant,**

v.

**L. J. CORPORATION et al., Appellees.**

**No. 13614.**

United States Court of Appeals District of Columbia Circuit.

Argued April 30, 1957.

Decided June 13, 1957.

Mr. Robert E. Lynch, Washington, D. C., for appellees.

Mr. Mark P. Friedlander, Washington, D. C., with whom Mr. Edward A. Aaronson, Washington, D. C., was on the brief, for appellant.

Before PRETTYMAN, WILBUR K. MILLER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

■ Appellant seeks $75,000 damages for alleged breach of what he described in his complaint as an oral agreement to form a "partnership" to acquire a specific tract of land, subdivide it and erect dwellings for sale. The complaint asserts that appellant, Cohen and Ochsman associated in this venture to acquire the property, commenced the undertaking and then, after adding Funger to the enterprise, appellees Cohen, Ochsman and Funger consummated the venture without appellant.

The District Court granted summary judgment for appellees on the pleadings, depositions, interrogatories and answers and arguments presented to the court.

The record indicates that appellant and Ochsman, while associated in building projects, learned that a large tract of land suitable for development was available. After commencing but not completing negotiations for purchase, Ochsman suggested that they consult with his father-in-law, Cohen, an older and more experienced businessman. Cohen expressed interest and joined appellant and Ochsman in the venture, and as the senior more or less assumed the role of manager or director of operations. He suggested, among other things, that they engage an outside real estate man to act for them. This was done and a contract to purchase was made in the name of Funger, also a son-in-law of Cohen, in order to keep the enterprise and plan secret. During the negotiations Cohen insisted that Funger be made a "partner." Subsequently Ochsman and/or Cohen advised appellant that the contract had been accepted. Cohen requested appellant to take steps to arrange for financing. the purchase which was to cost $130,000 to $140,000 and required a $100,000 loan. Pursuant to Cohen's directions appellant obtained a commitment for financing which Cohen rejected as too expensive. Appellant alleges his ability and willingness to contribute his share and that on inquiry from time to time he was told the matter was being considered.

The complaint asserts that Cohen, Ochsman and Funger secretly acquired the tract for approximately $143,000 in the name of Funger and his wife, that title was thereafter transferred to Cohen and his wife and by them to O. F. C. Corporation.[1] Subdivided lots were then transferred to the L. J. Corporation (31 lots), J. W. Corporation (32 lots) and S. L. Corporation (31 lots) at a stated price of $75 per lot. Lots were also conveyed by the O. F. C. Corporation to the M. P. Corporation. Thereafter houses were built on these lots and sold at a profit. Appellant alleges that Cohen, Ochsman and Funger "have failed and refused to account to this Plaintiff or to advise him of the development" of their common enterprise.

It is asserted by appellees and denied by appellant that from examination of the contract of purchase and the projected date of settlement appellant knew of the date of closing, the amount of his share and that he abandoned and withdrew from the venture. In their motion for summary judgment appellees; ment claimed, in addition to the theory of; abandonment, a failure of consideration, estoppel, the Statute of Frauds, and that the preliminary negotiations in which appellant participated did not constitute an enforceable agreement.

This appeal is, of course, not concerned with the ultimate resolution of the issues but with the narrow question of whether the record discloses genuine issues of fact which, if proven, will entitle appellant to relief. That it discloses;

1. It is assumed that these initials indicate Ochsman, Funger and Cohen.

sharply controverted issues of fact is clear; it remains only to decide whether, taken as a whole, (1) these issues are genuine and (2) recovery upon these facts is precluded as a matter of law.

(1)

The action in form is for damages for breach of an oral agreement to form a partnership. Viewed by its "four corners," the complaint fairly states (a) the making of an oral agreement which gave rise to a fiduciary relationship between the four individuals; (b) that the individual appellees breached fiduciary duties by their failure to inform appellant and by acquiring title and carrying out the project in a manner hostile to appellant's interests; (c) that the defaulting members of the venture have profited by their breach of fiduciary duties; and (d) that the defaulting members "have failed and refused to account to" appellant.

The venture for acquisition of a tract of land known as the "Hartley Tract," described in the complaint began with appellant and Ochsman, then associated in real estate developments other than the one here involved. The venture reflected by the record as it now stands concerns the purchase and development of this land but the entire project is now in the control of Ochsman, Cohen, who is Ochsman's father-in-law, and Funger, who is Ochsman's brother-in-law, and perhaps their wives. We need not and of course do not decide whether in fact appellant was "frozen" out, as in effect he claims, by Cohen and his two sons-in-law. However, the very existence of close family ties between Cohen, Ochsman and Funger lends credibility to appellant's complaint and made it more essential that appellees avoid any action which would benefit them as a family group at the expense or to the detriment of appellant.

So read and giving appellant the most favorable view of the record, as we must, we conclude that genuine issues of fact are presented.

(2)

The complaint alleges in substance, if not in form, the existence of a joint venture. Two or more persons who join in a particular business enterprise for profit, as in the purchase, development and sale of real estate, create a joint adventure or venture. See cases at 48 A.L.R. 1064 and 63 A.L.R. 915. This relationship may fall short of being a partnership or an agency. The relationship may be inferred from the conduct of the parties without express agreement. Hyman v. Regenstein, 5 Cir., 1955, 222 F.2d 545, 546; Appleman v. Kansas-Nebraska Natural Gas Co., 10 Cir., 1954, 217 F.2d 843, 848. Our record clearly indicates, and counsel for appellees properly conceded on oral argument, that appellant and appellees joined in some form of a common undertaking to purchase for development a tract of real estate. The fact that appellant may have participated only in the preliminary negotiations, as appellees contend, is immaterial if a joint venture was created.

The relationship of joint adventurers gives rise to certain reasonably well-defined fiduciary duties and obligations. The duty imposed is essentially one of good faith, fair and open dealing and the utmost of candor and disclosure to all concerned. "The relationship imposes upon the parties an obligation of loyalty to the joint enterprise and utmost good faith, fairness and honesty in their dealings with each other with respect to the subject matter." Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 10 Cir., 1954, 209 F.2d 917, 919.

"The same rule of good faith required applies to the entire transaction once about to be entered into. 'Within the scope of the enterprise they stand in a fiduciary relation each to the other, and are bound by the same standards of good conduct and square dealing as are required between partners. *This obligation begins with the opening of the negotiations for the formation of*

*the syndicate,* applies to every phase of the business which is undertaken, and continues until the enterprise has been completely wound up and terminated.'" Dexter & Carpenter v. Houston, 4 Cir., 1927, 20 F.2d 647, 652. (Emphasis added.) This fiduciary relationship precludes one member of the venture from purchasing or otherwise dealing with the property involved in the venture without a full disclosure to his associates. "In other words, neither could have consummated the plan to the exclusion of the other without an honest disclosure of all of the facts and an opportunity for the other to reap his end of the bargain." Appleman v. Kansas-Nebraska Natural Gas Co., supra, 217 F.2d at page 849.

Where one of the members acts as "captain" or "manager" of the venture the necessity for a full disclosure becomes more acute and rests more heavily on him. Kaye v. Smitherman, 10 Cir., 225 F.2d 583, 594, certiorari denied, 1955, 350 U.S. 913, 76 S.Ct. 197, 100 L. Ed. 800. That duty of disclosure to appellant would become especially acute when the venture developed to a point where three members of the "family" group of the de facto "manager" were associated with a person not related to them by blood or marriage. "Whatever the relations of the parties may be, if they have united for a common purpose they must be loyal to that purpose * * *." Delmonico v. Roudebush, C.C. D.Colo.1880, 5 F. 165, 170.

■ The form of the complaint suggests, somewhat ambiguously, that both damages for breach of a contract and an accounting for breach of a fiduciary relationship are sought; perhaps these ambiguities should, for present purposes, be resolved by reading the complaint as praying for damages *or* an accounting in the alternative. In all events, under Rule 8(f) Fed.R.Civ.P., 28 U.S.C.A., we must read the complaint, however inartfully drawn, as one which, when and if supported, would entitle appellant to the relief warranted by the proof, rather than the relief formally claimed by the pleading.[2] We conclude that if appellant establishes the facts asserted in his complaint he would be entitled to relief. We might also add at this point, that had the trial judge's attention been drawn to the line of authorities on the obligations and duties of members of a joint venture, from its inception, it is fair to suggest he would not have granted summary judgment.

■■ It is true, of course, that laches can bar rights springing from a fiduciary source as with other rights, but the defense of laches, especially as applied to a fiduciary relationship, is carefully scrutinized. Moreover, in the posture of the parties here involved, the burden of proving laches will rest more heavily on Cohen and his two sons-in-law than would be the case where no such family relationship existed. In all events, the issue of laches is one which we cannot resolve at this stage.

■ The fact that realty is the subject matter on which the alleged agreement was to operate should not render it within the Statute of Frauds. See 18 A.L.R. 484 and 95 A.L.R. 1242. Nor are the other defenses raised by appellees sufficient as a matter of law to warrant summary judgment.

The judgment of the District Court is reversed and the case remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

2. While the entire story is not discernible from the meager record before us, it would appear to present what is essentially an appeal to the equity powers of the court.